Payam Shahian (State Bar No. 228406)
STRATEGIC LEGAL PRACTICES, APC
e-mail: pshahian@slpattorney.com
11601 Wilshire Blvd., Suite 500
Los Angeles, CA 90025
Telephone: (310) 575-1845
Facsimile: (310) 693-9085

Dara Tabesh (State Bar No. 230434)
e-mail: DTabesh@hotmail.com
201 Spear St. Ste. 1100
San Francisco, CA 94105
Telephone: (415) 595-9208
Facsimile: (310) 693-9083

Attorneys for Plaintiff MARTIN EHRLICH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| MARTIN EHRLICH, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | Case Number: 2:10-cv-01151-ABC (PJWx)<br><br>Date:        July 12, 2010<br>Judge:       Hon.  Audrey B. Collins<br>Courtroom:  680<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................... i

I.   INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................ 1

III.   LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS ................. 4

IV.   ARGUMENT ............................................................................................... 4

    A.   Plaintiff Sufficiently Alleges His CLRA Claim. ..................................... 4

        1.   The facts concealed by BMW were material. ................................... 7

        2.   Plaintiff sufficiently alleges materiality. ........................................ 9

        3.   BMW was under a duty to disclose material facts............................ 12

            a)   BMW had exclusive knowledge of material facts not
                known to Plaintiff. ................................................................... 13

            b)   BMW actively concealed the existence of material facts......... 13

    B.   BMW Engaged in Fraudulent Conduct.................................................... 15

    C.   BMW Engaged in Unfair Practices ......................................................... 15

    D.   Plaintiff Has Adequately Alleged the Existence of a Secret Warranty
        Adjustment Program Under the Unlawful Prong of the UCL.................. 16

    E.   Plaintiff Has Adequately Pled That Defendant Breached the Implied
        Warranty Under The Song-Beverly Act. ................................................ 20

        1.   Vertical privity is not required under the Song-Beverly Act........... 20

        2.   Plaintiff has successfully alleged that BMW breached the implied
            warranty during the applicable warranty periods. ........................... 21

        3.   Even if BMW's implied warranty is limited to one year from the date
            of purchase, BMW breached it when Plaintiff's second windshield
            cracked eight months after he replaced it........................................ 24

V.   CONCLUSION ............................................................................................ 25

TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,

    129 S. Ct. 1937 (2009) ............................................................................4

*Atkinson v. Elk Corp.*,

    109 Cal. App. 4th 739 (2003).......................................................... 20, 25

*Bardin v. DaimlerChrysler Corp.*,

    136 Cal. App. 4th 1255 (2006) ................................................................5

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007) ................................................................................4

*Bristow v. Lycoming Engines*,

    2007 U.S. Dist. LEXIS 31350 (E.D. Cal. April 10, 2007).....................9

*Chamberlan v. Ford Motor Co.*,

    314 F. Supp. 2d 953 (N.D. Cal. 2004) ...................................................7

*Chamberlan v. Ford Motor Co.*,

    369 F. Supp. 2d 1138 (N.D. Cal. 2005) ............................................... 12

*Circlli v. Huyndai Motor Co.*,

    2009 WL 5788762 (C.D. Cal. 2009) ............................................... 9, 11

*Clemens v. DaimlerChrysler Corp.*,

    534 F.3d 1014 (9th Cir. 2008)......................................................... 12, 21

*Daugherty v. American Honda Motor Co., Inc.*,

    144 Cal. App. 4th 824 (2006)........................................................ passim

*Falk v. General Motors Corp.*,

    496 F. Supp. 2d 1088 (N.D. Cal. 2007)......................................... passim

*Glover v. BIC Corp.*,

    6 F.3d 1318 (9th Cir. 1993).................................................................. 11

*Gonzalez v. Drew Industries, Inc.*,

    2007 U.S. Dist. LEXIS 35952 (C.D. Cal. 2007) ................................. 20

*GPU Litigation,*

    2009 U.S. Dist. Lexis 108500 (N.D. Cal. 2009) .................................................... 21

*Gusse v. Damon Corp.,*

    470 F. Supp. 2d 1110 (C.D. Cal. 2007) ................................................................ 20

*Hovsepian v. Apple, Inc.,*

    2009 WL 2591445 (N.D. Cal. Aug. 21, 2009) ..................................................... 23

*In re Apple & AT&TM Antitrust Litig.,*

    596 F. Supp. 2d 1288 (N.D. Cal. 2008) ................................................................. 6

*In re Gilead Scis. Sec. Litig.,*

    536 F. 3d 1049 (9th Cir. 2008) ............................................................................... 4

*In re Tobacco II Cases,*

    46 Cal. 4th 298 (2009) .......................................................................................... 15

*In Re: OnStar Contract Lit.,*

    600 F. Supp. 2d. 861 (E.D. Mich. 2009) .......................................................... 5, 12

*Isip v. Mercedes-Benz USA, LLC,*

    155 Cal. App. 4th 19 (2007) ................................................................................. 24

*Jensen v. BMW of North America, Inc.,*

    35 Cal. App. 4th 112 (1995) ................................................................................. 23

*Kent v. DaimlerChrysler Corp.,*

    200 F. Supp. 2d 1208 (N.D. Cal. 2002) ................................................................. 7

*LiMandri v. Judkins,*

    52 Cal. App. 4th 326 (1997) ................................................................................. 12

*Linear Technology Corp. v. Applied Materials, Inc.,*

    152 Cal. App. 4th 115 (2007) ............................................................................... 15

*Marsikian v. Mercedes Benz USA, LLC,*

    2009 U.S. Dist. LEXIS 117012 (C.D. Cal. May 4, 2009) ............................. passim

*Mass. Mut. Life Ins. Co. v. Superior Court,*

    97 Cal. App. 4th 1282 (2002) ................................................................................. 9

*McKell v. Washington Mutual, Inc.*,

    142 Cal. App. 4th 1457 (2006) ............................................................. 15

*Mexia v. Rinker Boat Co.*,

    174 Cal. App. 4th 1297 (2009) ...................................................... 21, 22

*Miller v. Mercedes-Benz USA, LLC*,

    CV 06-5382 ABC (SSx) (C.D. Cal. February 8, 2008) ..................................... 1, 8

*Mills v. Forestex*,

    108 Cal. App. 4th 625 (2003) ............................................................. 24

*Mirkin v. Wasserman*,

    5 Cal. 4th 1082 (1993) ....................................................................7

*Mocek v. Alfa Leisure, Inc.*,

    114 Cal. App. 4th 402 (2003) ............................................................. 25

*Morris v. BMW*,

    2007 U.S. Dist. Lexis 85513 (N.D. Cal. 2009) ..................................... 17

*Mourning v. Smithkline Beecham Corp.*,

    2009 WL 733873 (N.D. Cal. March 17, 2009) ..................................... 16

*Oestreicher v. Alienware Corp.*,

    322 Fed. Appx. 489 (9th Cir. April 2, 2009) ...........................................8

*Oestreicher v. Alienware Corp.*,

    544 F. Supp. 2d 964 (N.D. Cal. 2008) ....................................................5

*Osborne v. Subaru of America*,

    198 Cal. App. 3d 646 (1988) ............................................................. 21

*Parkinson v. Hyundai Motor America*,

    258 F.R.D. 580 (C.D. Cal. 2008) ..................................................... 5, 9

*Rennick v. O.P.T.I.O.N. Care, Inc.*,

    77 F.3d 309 (9th Cir. 1995) ...............................................................8

*Rush v. Whirlpool Corp.*,

    2008 U.S. Dist. LEXIS 17210 (W.D. Ark. 2008) ................................. 13

*Rush v. Whirlpool* Corp.,

   2008 WL 509562 (W.D. Ark. 2008)....................................................................6

*Saunders v. Superior Court*,

   27 Cal. App. 4th 832 (1994)...................................................................... 16

*Shapiro v. Sutherland*,

   64 Cal. App. 4th 1534 (1998)..................................................................... 13

*State Farm Mutual Automobile Insurance Co. v. Davis*,

   937 F.2d 1415 (9th Cir. 1991)....................................................................8

*Stern v. AT&T Mobility Corp. et al.*,

   2008 WL 4382796 (Cal. C.D. 2008) ............................................................8

*Stickrath v. Globalstar, Inc.*,

   2008 WL 344209 (N.D. Cal. Feb. 6, 2008)........................................ 6, 8, 14

*Tietsworth v. Sears, Roebuck & Co.*,

   2010 WL 1268093 (N.D. Cal. March 31, 2010) ..................................... 12

*Tietsworth v. Sears, Roebuck and Co.*,

   2010 U.S. Dist. Lexis 44053 (N.D. Cal. March 31, 2010)........................9

*U.S. v. Redwood City*,

   640 F.2d 963 (9th Cir. 1981)....................................................................4

*United States v. Ford Motor Co.*,

   421 F. Supp. 1239 (D.D.C. 1976) ............................................................ 10

*United States v. General Motors Corp.*,

   417 F. Supp. 933 (D.D.C. 1976) .............................................................. 10

*Williams v. Gerber Products Co.*,

   523 F.3d 934 (9th Cir. 2008).................................................................. 15

*Wilson v. Hewlett-Packard Co.*,

   2009 WL 3021240 (N.D. Cal. 2009) .........................................................5

STATUTES

Civil Code § 1791 ................................................................................... 25

Civil Code § 1792 ............................................................................. 20, 25

Civil Code § 1795.90 *et seq.* ............................................................... 16

Civil Code § 1795.92 ....................................................................... 16, 17

Commercial Code § 2314 ...................................................................... 21

Commercial Code § 2725 ...................................................................... 23

RULES

California Rules of Court, Rule 8.1115(a) ..................................................8

## I.      INTRODUCTION

Plaintiff Martin Ehrlich ("Plaintiff") has satisfied the standards for pleading his Consumer Legal Remedies Act ("CLRA"), Secret Warranty, Unfair Competition Law ("UCL"), and Implied Warranty claims under the Federal Rules. Plaintiff has pleaded facts that show the materiality of the safety defect that causes the windshields of the Class Vehicles to crack, chip, and/or pit with little or no impact, a duty to disclose facts related to that defect, and a failure to disclose such material facts by Defendant BMW of North America, LLC ("Defendant" or "BMW").  Nothing more is required to bring a CLRA claim.  Similarly, Plaintiff has pleaded a violation of the Secret Warranty Law by alleging facts that show BMW's clandestine program to secretly pay the cost of repairing or replacing defective windshields outside the vehicles' warranty.  Again, nothing more is required.  With respect to his implied warranty claims, Plaintiff has alleged that BMW breached the implied warranty at the time of sale when it sold to Plaintiff and prospective Class Members vehicles that it knew suffered from a latent defect. BMW is simply wrong to contend that vertical privity is required or that the breach occurred outside the applicable warranty period.  Finally, Plaintiff has pleaded facts sufficient to show BMW engaged in fraudulent, unfair, and unlawful conduct and thus violated the UCL.  Despite this, BMW goes to great lengths to ignore applicable law and standards, rely on inapposite or unpublished case law, and misconstrue Plaintiff's allegations, all in hopes of avoiding liability for conduct that gives rise to legitimate claims.  BMW's motion to dismiss should be denied.

## II.     STATEMENT OF FACTS

As alleged by Plaintiff, beginning in 2001, if not before, BMW manufactured and sold certain 2001 through 2010 Mini vehicles ("Class Vehicles").  BMW knew that the Class Vehicles contains one or more design flaws and/or defects that cause their windshields to have an inordinate and dangerous propensity to crack, chip, and/or pit under circumstances that would not cause non-defective windshields to

crack, chip, and/or pit ("Cracking Defect"). (First Amended Complaint ("FAC") ¶¶ 1-3.) When a Class Vehicle's windshield cracks, the cost of repair is borne, in nearly every instance, by Class Members or their insurance companies. The cost is not inconsequential, often rising as high as one thousand dollars for each windshield replacement. Worse still, because the same defective windshields are sold as replacements for the original windshield, Class Members have replaced and will continue to replace their windshields more than once. (*Id.* ¶¶4, 34-35, 40 & 51.) BMW knew that its Class Vehicles and their windshields would fail prematurely, but failed to disclose this fact to Plaintiff and prospective Class Members, who have a reasonable expectation that their windshields will not crack under circumstances that would not cause a non-defective windshield to crack, such as when their vehicle is parked in a garage overnight or when there is little to no impact. (*Id.* ¶¶ 2, 23, 35, 97 & 112.) Indeed, thus far, Plaintiff has replaced two defective Mini windshields for one vehicle, including one windshield that cracked while his vehicle was parked in a garage overnight. (*Id.* ¶¶ 20-23.)

Plaintiff alleges that as the number of repairs for the Cracking Defect increased, and Class Members grew dissatisfied with the Class Vehicles' cracked windshields, BMW was finally forced to acknowledge the nature of the Cracking Defect. (*Id.* ¶¶ 11-12 & 55.) However, rather than advise consumers of the nature and extent of the Cracking Defect, BMW issued a secret Technical Service Bulletin ("TSB") to its dealers (not Plaintiff or other Class Vehicle owners), in which it identified only one of several manufacturing and design defects causing the Cracking Defect and instructed them to replace the windshields where stress crack is the root cause. (*Id.* and Ex. 2 to Declaration of Eric Y. Kizirian in Support of Motion to Dismiss ("Kizirian Decl.").) BMW's secret warranty program went beyond just covering windshields that suffer from a stress crack; it also covered other non-stress-related defects for those consumers who complained loudly enough, regardless of whether those defects occurred within the warranty period.

1   (FAC ¶¶ 13-16 & 61.)  Defendant, however, failed to reimburse or notify Plaintiff

2   or any other owner or lessee of the Class Vehicles of BMW's free windshield repair

3   and/or replacement reimbursement programs, including its 2009 program, in

4   violation of California's Secret Warranty Law.  (*Id.* ¶¶ 15-16 & 61-74.)

5           BMW's conduct creates more than a mere legal violation; it constitutes a

6   safety hazard.  The windshield is a vital component of a vehicle's safety restraint

7   system ("SRS"), which also includes airbags and seat belts.  These safety features,

8   including the windshield, are all part of a safety network.  (*Id.* ¶¶ 5-6.)  This

9   network must function in concert to provide optimal safety for the occupants.  All

10  the individual components of the SRS are dependent on each other to function

11  properly, and if there is a compromise or weakness in just one aspect of the SRS,

12  the likelihood of other parts not working properly is high.  (*Id.* ¶¶ 5-7.)[1]  For

13  example, the windshield provides virtually all the support a passenger-side airbag

14  needs to deploy properly; and if the windshield is weak or compromised, the airbag

15  can be useless in a collision, potentially causing serious bodily injuries.  (*Id.* ¶¶ 6-8

16  & 52.)  Similarly, the windshield provides much of the roof support for most

17  vehicles, and if a windshield is weak, cracked, or compromised, it can become

18  dislodged from the vehicle during a roll-over, compromising roof-crush resistance.

19  (*Id.*)  Thus, the effects of the Cracking Defect can be devastating to consumer

20  because it can lead to serious head and neck injuries and/or ejection of the vehicle's

21  occupants onto the roadway, where they have no protections whatsoever.  (*Id.*)

22          BMW had a duty to disclose to Plaintiff and the Class the defective nature of

23  the Class Vehicles and their windshields at the time of sale and thereafter.  (*Id.* ¶¶

24  38 & 94-96.)  The facts concealed or not disclosed by BMW to Plaintiff and Class

25  Members are material in that a reasonable consumer would have considered them to

26  be important in deciding whether to purchase the Class Vehicles or pay a lesser

27  _____

28       [1] BMW agrees with these allegations and promises at least this much in its
     various marketing materials.  (FAC ¶¶ 41-46.)

price for them.  Had Plaintiff and other Class Members at the time of purchase or lease known about the Cracking Defect contained in the Class Vehicles and/or the monetary costs associated with repairing the Cracking Defect, they would not have bought or leased the Class Vehicles or would have paid less for them.  (*Id.* ¶¶ 9-10, 38 & 94-96.)   As a result of BMW's misconduct alleged herein, Plaintiff and Class Members have been harmed and have suffered damages.  (*Id.* ¶¶ 1-19.)

## III.   LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS

In evaluating BMW's motion to dismiss under the standard imposed by Federal Rule of Civil Procedure 12(b), the allegations of Plaintiffs' Complaint must be accepted as true and construed in the light most favorable to plaintiffs.  *In re Gilead Scis. Sec. Litig.*, 536 F. 3d 1049, 1055 (9th Cir. 2008).  BMW's Motion should be granted only if the Court finds that Plaintiffs have not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  For these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6).  *U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *see Bell Atl.*, 550 U.S. 544 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable," and "that a recovery is very remote and unlikely.").

## IV.   ARGUMENT

### A.   Plaintiff Sufficiently Alleges His CLRA Claim.

BMW relies heavily *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006), but *Daugherty* does not help BMW.  In *Daughtery*, the plaintiffs failed to allege the existence of a safety defect.  *Daugherty* does not apply here in the manner that BMW contends because BMW has failed to disclose a

1    known safety defect.[2]   (FAC ¶¶ 24, 36, 97 & 112.)  Indeed, in granting a motion to

2    dismiss, the *Daughtery* court *emphasized* the absence of allegations of safety

3    defects.  *Daugherty*, 144 Cal. App. 4th at 836 ("The complaint is devoid of factual

4    allegations showing . . . any safety concerns posed by the defect.").

5         In contrast, the court in *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088,

6    1100 (N.D. Cal. 2007), distinguishing *Daugherty* under the same analysis (but

7    different facts) applicable here, denied defendant's motion to dismiss, finding that

8    "GM knew and concealed that its speedometers were defective and likely to fail far

9    more often than expected by the consuming public."  The court agreed with

10   plaintiffs that "a faulty speedometer easily would lead to traveling at unsafe speeds

11   and moving-violation penalties."  *Id.*  The court found significant the fact that

12   plaintiffs in *Daugherty* failed to allege safety defects.[3]  Here, the Complaint

13   _____

14        [2] BMW disingenuously attempts to brush aside the relevance of the safety
     issue in *Daugherty*, (MTD at fn. 5), by ignoring the import of the *Daugherty* court's

15   reasoning with respect to the safety issue.  The *Daugherty* court specifically noted
     that because plaintiffs made no allegations regarding safety, "the alleged defect

16   posed no unreasonable risk" and therefore was not material, so no duty to disclose
     was triggered.  *See Daugherty*, 144 Cal. App. 4th at 836.  BMW correctly points out

17   that "[t]he issue of "safety" was never pled in any iteration of the *Daugherty*
     complaint," (MTD at fn. 5), which is precisely the point: had the plaintiffs made

18   safety allegations, it would have triggered a duty to disclose.  *See Daugherty*, 144
     Cal. App. 4th at 836.  As in *Daugherty*, those courts that have found materiality

19   lacking, and have therefore dismissed omission-based CLRA claims, have gone out
     of their way to indicate that the undisclosed facts did not concern consumer safety.

20   *See, e.g.*, *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1270 (2006)
     (noting that "Plaintiffs did not allege any safety concerns" related to the undisclosed

21   fact that the defendant automaker used tubular steel in its exhaust manifolds instead
     of the more durable cast iron); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d

22   964, 970, n. 6 (N.D. Cal. 2008) (referring to the "Daugherty safety exception"),
     971-973 (finding that, unlike in *Falk*, plaintiff had made no showing of safety

23   considerations, and declining to extend a manufacturer's duty to disclose to "a
     latent non-safety related defect in its product") (emphasis added); *Wilson v.*

24   *Hewlett-Packard Co.*, 2009 WL 3021240, at *1 (N.D. Cal. 2009) ("[T]he instant
     case does not implicate safety concerns.").

25        [3] Many courts have embraced *Falk*'s analysis.  *See, e.g.*, *In Re: OnStar*
     *Contract Lit.*, 600 F. Supp. 2d. 861, 871-72 (E.D. Mich. 2009); *Parkinson v.*

26   *Hyundai Motor America*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008); *In re Apple &*

specifically alleges that BMW failed to disclose significant safety issues.  (FAC ¶¶ 9, 38, 47 & 48.)  Unlike the omissions addressed in *Daugherty*, these omissions were material precisely because they invoked safety concerns.

A recent automobile defect case brought in the Central District of California, *Marsikian v. Mercedes-Benz USA, LLC*, No. 08-04876 AHM (JTLx) (C.D. Cal. May 4, 2009),[4] is instructive.  In *Marsikian*, plaintiffs brought UCL, CLRA, Fraud, Breach of Express Warranty, and Unjust Enrichment causes of action.  The plaintiffs accused defendant Mercedes of failing to disclose a defect in the air intake system of the automobiles.  *Id.* at 1.  The air intake system was allegedly "susceptible to clogging," which could cause "substantial electrical failure," which in turn could cause traffic accidents.  *Id.* at 2-3.  Mercedes had argued that any such safety concern was purely speculative and that it would not have affected a reasonable consumer's decision to buy the car.  *Id.* at 15-16.  The court disagreed, finding Mercedes' contentions better suited to summary judgment.  *Id.* at 16.  Because, in construing plaintiffs' allegations favorably to them, plaintiffs had alleged the "plausible prospect of a safety problem," the allegations of materiality were plainly sufficient to survive a motion to dismiss.  *Id.* at 16-17.  Relying heavily on *Falk*, the Court found that Mercedes had an affirmative duty to disclose material facts, such as the "prospect of a safety problem, as well as the monetary cost and inconvenience of water damage in the car."[5]  *Id.* at 9.

As set forth in this brief, Plaintiff makes similar allegations showing that

---

*AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310-12 (N.D. Cal. 2008); *Rush v. Whirlpool* Corp., 2008 WL 509562, at *4 (W.D. Ark. 2008); *Stickrath v. Globalstar, Inc.*, 2008 WL 344209, at *3 (N.D. Cal. Feb. 6, 2008).

[4] A copy of the *Marsikian v. Mercedes-Benz U.S.A.* opinion is attached as Exhibit 1to Plaintiff's Appendix of Recent Authority, filed herewith.  The *Marsikian* decision can also be found at *Marsikian v. Mercedes Benz USA, LLC*, 2009 U.S. Dist. LEXIS 117012 (C.D. Cal. May 4, 2009).

[5] Indeed, Judge Matz, in *Marsikian*, correctly noted that "An example of a material fact that *Daugherty* emphasized is an unreasonable safety risk." *Marsikian*, slip op. at 7 (citing *Daugherty*, 144 Cal. App. 4th at 836).

1   BMW was aware of material facts concerning safety defects and the monetary costs

2   associated with such defects and failed to disclose those facts despite its duty to do

3   so.  By pleading the materiality of an omitted fact, Plaintiff has provided the basis

4   for a duty to disclose under California law and stated a claim under the CLRA.  *See,*

5   *e.g.*, *Falk*, 496 F. Supp. 2d at 1093-96. [6]

6              **1.    The facts concealed by BMW were material.**

7            To establish materiality, a plaintiff need only demonstrate that "had the

8   omitted information been disclosed, one would have been aware of it and behaved

9   differently."  *Id.* at 1095 (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093

10  (1993)).  Materiality is viewed from the perspective of a "reasonable consumer."

11  *Falk*, 496 F. Supp. 2d at 1095.  Material facts may include, but are not limited to,

12  unreasonable safety defects,[7] *see, e.g., id.* at 1096 (explaining that defect to

---

14      [6] BMW attempts to invoke a primary jurisdiction argument, suggesting that,
15  if Plaintiff has a legitimate safety concern, then this matter "is best addressed by
    petitioning the National Highway Traffic Safety Administration ("NHTSA") for a
16  safety-related investigation."  (MTD at fn. 6.)  However, BMW does not cite to any
    authority for the claim that the doctrine of primary jurisdiction should apply to
17  Plaintiff's state law consumer protection claims.  Indeed, every California court that
    has analyzed the issue in connection with California's consumer protections statues
18  has rejected it.  *See Marsikian*, slip op. at 12-13 (finding that primary jurisdiction
19  doctrine does not apply because "this action presents no claims arising under any
    statutes that the NHTSA enforces, only claims that primarily rest on contract and
20  tort principles"); *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 964 (N.D.
    Cal. 2004) ("The plain language of the Motor Vehicle Safety Act indicates the
21  opposite. [¶]As discussed previously, the savings clause at 49 U.S.C. Section
    30103(d) specifically states that a remedy under Section 30118 'is in addition to
22  other rights and remedies under other laws of the United States or a State.'")
23  (citations omitted); *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208 (N.D.
    Cal. 2002) (same).
24
        [7] Despite ample case law to the contrary, BMW goes to great lengths to
25  discredit the notion that a safety risk is material.  (MTD at 9:7-10.)  As explained
26  above, BMW cursorily dismisses the relevance of the *Daugherty* court's
    explanation that the absence of allegations concerning safety risks was a factor in its
27  finding that a duty to disclose did not exist, *Daugherty*, 144 Cal. App. 4th at 836,
    and ignores case law following *Daugherty* that acknowledges that safety defects are
28  material.  *See, e.g., Falk*, 496 F. Supp. 2d at 1096.

---

speedometer causing drivers to travel at unsafe speeds is material), and monetary costs associated with such defects (including the inconvenience of repeated repairs and replacement costs), *Marsikian*, slip op. at 9 ("Given the plausible prospect of a safety problem, as well as the monetary cost and inconvenience of water damage in the car, Plaintiffs' allegations . . . are also plausible and plainly sufficient."). Finally, material facts may also include information about non-safety defects. *See, e.g.*, *Miller v. Mercedes-Benz USA, LLC*, CV 06-5382 ABC (SSx), at 11 (C.D. Cal. Feb. 8, 2008) (Hon. Judge Collins)[8] (finding "plaintiff's claims that 'no disclosures regarding smart keys or replacement smart keys were made to [her] prior to her purchase of a 2003 Mercedes-Benz vehicle to be material."); *Stickrath*, 2008 WL 344209, at *3 (finding failure to disclose poor satellite service material); *Stern v. AT&T Mobility Corp. et al.*, 2008 WL 4382796, at *12 (Cal. C.D. 2008) (finding that "a charge on a customer's [cell phone] bill is material to the customer");

---

Moreover, BMW tries to rely on unpublished California case law, *Larsen v. Nissan North America*, 2009 WL 1766797 (Cal. Ct. App. 2009) (unpublished), to bolster its argument that known safety risks are not material. BMW does so despite California Rules of Court, Rule 8.1115(a), which states that an uncertified or unpublished opinion "must not be cited or relied on by a court or a party in any other action." *See also Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 317 (9th Cir. 1995) ("Appellants cite *Ciampi v. Red Carpet Corp.*, 141 Cal. App. 3d 336, 213 Cal. Rptr. 388 (Ct. App. 1985), *reh'g granted*, but *Ciampi* may not be cited because rehearing was granted and the opinion on rehearing was not published."); *cf. State Farm Mutual Automobile Insurance Co. v. Davis*, 937 F.2d 1415 (9th Cir. 1991) ("[W]e treat a depublished decision the same way we would treat a decision that the court of appeal initially declined to publish.") (citing Calif. Ct. R. 977(a) (Supp. 1990) ("non-published opinions 'shall not be cited or relied on by a court or a party in any other action or proceeding . . . .'")).

To make matters worse, in choosing to rely on unpublished case law, BMW declines to inform the Court of an *unpublished* Ninth Circuit case law interpreting *Daugherty* that explains that a CLRA claim can arise outside of warranty obligations where there is a failure to disclose a safety defect. *Oestreicher v. Alienware Corp.*, 322 Fed. Appx. 489, 493 (9th Cir. April 2, 2009) ("A manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.").

[8] A copy of *Miller v. Mercedes-Benz USA, LLC*, CV 06-5382 ABC (SSx), at 11 (C.D. Cal. Feb. 8, 2008) (Hon. Judge Collins), is attached as Exhibit 2 to Plaintiff's Appendix of Recent Authority, filed herewith.

1  *Tietsworth v. Sears, Roebuck and Co.*, 2010 U.S. Dist. Lexis 44053, at *34 (N.D.

2  Cal. March 31, 2010) (finding that "requiring users to restart the Machines and

3  initiate multiple wash cycles to complete a load of laundry or pay costly repair bills

4  . . . are material facts that Plaintiffs and Class Members would find important").

5  **2.  Plaintiff sufficiently alleges materiality.**

6  Here, Plaintiff has satisfied the pleading requirements for materiality.  The

7  Complaint alleges the materiality of the Cracking Defect, including the costs to

8  have it repaired or replaced, (FAC ¶¶ 4, 22, 23, 35 & 51), the need for repeated

9  repairs or replacements, (*id.* ¶¶ 4, 20-23, 34-35, 40 & 51), and the significant safety

10  dangers posed by the Cracking Defect, (*see, e.g.*, *id.* ¶¶ 5-8 & 52).  Further, Plaintiff

11  and Class Members reasonably expected that BMW would either not sell vehicles

12  with known safety defects, or would disclose any such defect to its customers when

13  it learned of the defect.  (*Id.*¶ 38, 47, 48, 60, 91, 95 & 96.)  Plaintiff further alleges

14  that he and Class Members would not have bought or leased the Class Vehicles or

15  would have paid less for them had they known at the time of purchase or lease

16  about the Cracking Defect contained in the Class Vehicles and/or the monetary

17  costs associated with repairing the Cracking Defect.  (*Id.* ¶¶ 9-10, 38 & 94-96.); *see,*

18  *e.g.*, *Circlli v. Huyndai Motor Co.*, 2009 WL 5788762, at *3 (C.D. Cal. 2009)

19  (noting that had Huyndai adequately disclosed omitted information about vehicle's

20  subframe, plaintiff alleged he would have been aware of it and behaved

21  differently).[9]

22  _____

23  [9] With respect to BMW's failure to disclose material information to Plaintiff
and Class Members, Plaintiff properly alleges "reliance."  (*See* MTD at 3:21-4:38.)

24  For CLRA and UCL claims, reliance is established through materiality.  *See*
*Parkinson*, 258 F.R.D. at 596 ("If materiality is shown, reliance and causation may

25  be presumed as to the entire class.") (citation omitted); *Mass. Mut. Life Ins. Co. v.*
*Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002) ("[T]here is nothing in the

26  record which shows that Mass Mutual's own assessment of the discretionary
dividends was disclosed to any class member.  If the undisclosed assessment was

27  material, an inference of reliance as to the entire class would arise . . . .");  *Bristow v.*
*Lycoming Engines*, 2007 U.S. Dist. LEXIS 31350, at *21 (E.D. Cal. April 10, 2007)

28

BMW goes out of its way to misconstrue Plaintiff's safety allegations.  First, BMW denies that the Cracking Defect is a safety issue because Plaintiff does not plead actual injury.  (*See* Motion to Dismiss ("MTD") at 1:1-19.)  BMW cannot and has not cited a single case holding that pleading a safety defect requires pleading actual examples of injury or death due to the safety defect.  Indeed, it strains credibility for BMW to contend that a windshield that has a strong propensity to crack due to slight or no impact does not implicate safety issues.

Second, BMW tries to overcome Plaintiff's legitimate safety concerns by mischaracterizing those concerns as arising only after: a windshield cracks, the vehicle owner continues to drive the vehicle, a roll-over accident occurs, and the window becomes dislodged due to the pre-existing crack.  (*See* MTD at 11:1-19.)  This is not the manner in which Plaintiff states his allegations.  Drivers and passengers of the Class Vehicles, even if their windshields have not yet cracked, risk their safety by riding in Class Vehicles equipped with BMW's defective windshields.  A crack in the windshield is not the defect itself, it is a manifestation of an underlying defect: an unreasonably weak windshield that, due to its weakness, has a propensity to crack.[10]  This weakened windshield, even when not cracked, compromises driver safety because it is part of the vehicle's SRS, of which the

---

("Under the UCL and CLRA, the legally relevant question is framed not in terms of 'reliance,' which is required in common law fraud, but of materiality.  Here, as already noted, the complaint states that defendants failed to disclose material information, and that this omission concerned 'facts that a reasonable consumer would have considered important in deciding whether or not to purchase or lease the aircraft.").  Here, as stated above, Plaintiff has alleged those facts.  (FAC ¶ 116; *see also id.* ¶¶ 10 & 96.)

[10] BMW claims that that the Cracking Defect occurs under very isolated circumstances and is not a sign of widespread defect.  (MTD at 18:1-5)  BMW is wrong because it confuses the existence of a defect with the manifestation of it.  *See United States v. Ford Motor Co.*, 421 F. Supp. 1239, 1241-42 (D.D.C. 1976) (existence of defect based on warranty return rate of 2%); *United States v. General Motors Corp.*, 417 F. Supp. 933, 938 (D.D.C. 1976) (GM stipulates that 300 fires in population of 375,000 vehicles constituted a significant number on which to base finding of defect but denies it is safety related), *aff'd*, 565 F.2d 754 (D.C. Cir. 1977).

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**

windshield is an integral part, and when the integrity of the windshield is compromised, the ability of the SRS to protect passengers of the Class Vehicles is likewise compromised.  (*See id.* ¶ 5-8.).[11]

Third, in an attempt to distract from the salient issue—materiality—BMW argues that Plaintiff's UCL and CLRA claims are barred "as a matter of law" because manifestation of Plaintiff's cracked windshield occurred outside his vehicle's express warranty.[12]  (MTD at 5:3-9.)  This is not an express warranty case; this is, at its essence, a consumer protection case.  The CLRA and UCL are distinct from the laws of warranty.  The California legislature passed the CLRA and the UCL in large part because traditional warranty and tort doctrines did not provide consumers sufficient protection.  The facts here are comparable to *Circlli*, 2009 WL 5788762, at *3.  There, plaintiffs accused defendant Huyndai of failing to disclose that their vehicles' sub-frame was susceptible to corrosion, which weakened structural integrity.  The deficient corrosion protection could allegedly cause a driver to lose control of a vehicle, though the only instance in which that happened came eight years (and more than 80,000 miles) after the car was purchased (the applicable warranty covered the vehicle for 60 months or 60,000 miles).  *Id.* at *1.  The court concluded that plaintiff had nonetheless pleaded materiality because, had Huyndai adequately disclosed the omitted information, plaintiff alleged he would have been aware of it and behaved differently.  *Id.* at *3.

---

[11] Whether these alleged facts rise to the level of a valid safety concern is a question of fact that must be decided by a jury.  *See, e.g., Glover v. BIC Corp.*, 6 F.3d 1318, 1325 (9th Cir. 1993) (whether disposable lighter posed safety risk was a jury question); *Sanchez v. WalMart Stores, Inc.*, 2008 WL 3272101 (E.D. Cal. 2008) (Jury questions preclude motion for summary judgment of CLRA and UCL claims based on allegedly unsafe child stroller).

[12] Also, BMW neglects to mention that replacement of Plaintiff's second cracked windshield (*i.e.*, a crack in the replacement windshield) was within BMW's 1-year/unlimited miles warranty period for replacement parts and that BMW refused to reimburse Plaintiff for either windshield replacement.  (FAC ¶¶ 14-15, 20-24 & 71); *see also, infra*, § E.3.

Moreover, many courts have found that plaintiffs have stated valid CLRA and UCL claims for defects related to safety despite the fact that they were not covered by automaker's express warranty. *See, e.g.*, *Falk*, 496 F. Supp. 2d at 1100; *Marsikian*, slip op. at 3, 9; *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144-45 (N.D. Cal. 2005); *In Re: OnStar Contract Lit.*, 600 F. Supp. 2d. at 871-72 (potential for loss of automatic crash notification). BMW's reliance on *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1014, 1023 (9th Cir. 2008), and *Daugherty*, 144 Cal. App. 4th at 836, to create a *per se* rule that states otherwise is misplaced because those cases did not involve safety concerns.[13] This, certainly, is the most important aspect distinguishing *Clemens* and *Daugherty*. Thus, by importing the standards of those cases here (and misinterpreting them), BMW hopes to create a *per se* rule wherein a consumer can have no reasonable expectation regarding the safety of his vehicle once an express warranty period has expired. While this may be convenient to BMW, it is unfair and dangerous to consumers and is not the scheme contemplated by the CLRA and the UCL.

### 3.  BMW was under a duty to disclose material facts.

Under California law, a duty to disclose material facts may arise in the following circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material fact. *Id.* at 1094-96 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)). Here, Plaintiff pleads facts sufficient to show a duty to

---

[13] BMW's reliance on *Tietsworth v. Sears, Roebuck & Co.*, 2010 WL 1268093, at *20 (N.D. Cal. March 31, 2010), is also misplaced. There, the court rejected a safety-based disclosure obligation because "[t]here are no factual allegations that any named Plaintiff or any identifiable member of the putative class actually experience a malfunction." Here, the complaint alleges that Plaintiff and prospective class members have experienced the manifestation of the Cracking Defect. (FAC ¶¶ 21-24 & 35.) This is not speculative.

1    disclose under prongs (2) and (3).

2                  **a)**      **BMW had exclusive knowledge of material facts not**

3                           **known to Plaintiff.**

4       BMW was obligated to disclose the Cracking Defect because it was a

5    material safety fact within its exclusive knowledge.  *See Shapiro v. Sutherland*, 64

6    Cal. App. 4th 1534, 1544 (1998) ("Generally where one party to a transaction has

7    sole knowledge or access to material facts and knows that such facts are not known

8    or reasonably discoverable by the other party, then a duty to disclose exits.").  Here,

9    Plaintiff has pled facts establishing that the existence of the defect was a material

10   fact within BMW's exclusive control.  (FAC ¶¶ 9-10 & 37.)  Since 2001, if not

11   before, BMW knew about the Cracking Defect through sources not available Class

12   Members, including but not limited to pre-release testing data, consumer

13   complaints, testing conducted in response to those complaints, replacement part

14   sales data, aggregate data from BMW dealers, and from other internal sources.

15   (*See, e.g.*, *id.* ¶ 2, 9, 10, 37, 38, 96 & 116.)  *See Falk*, 496 F. Supp. 2d at 1096-97

16   (finding allegations that only the defendant automaker had access to similar

17   aggregate data sufficient to plead exclusive knowledge of a systematic defect); *Rush*

18   *v. Whirlpool Corp.*, 2008 U.S. Dist. LEXIS 17210, at *11 (W.D. Ark. 2008) (same).

19       Because material facts surrounding the Cracking Defect were within BMW's

20   exclusive control, and because BMW had superior knowledge of the defect, it had a

21   legal duty to disclose the safety defect to its consumers.  The Complaint is thus

22   sufficient to allege the existence of BMW's independent duty to disclose material

23   facts, giving rise to a CLRA claim based on its failure to do so.[14]

24                  **b)**      **BMW actively concealed the existence of material facts.**

25       While BMW does not address in its papers the notion that active

26

27       [14] The Ninth Circuit has held that under California law "a duty to disclose can
. . . arise when one party has superior knowledge" of material facts. *Funk v. Sperry*

28   *Corp.*, 842 F.2d 1129, 1134 (9th Cir. 1988).

1  concealment creates a duty to disclose, Plaintiff has alleged sufficient facts here

2  creating an independent basis for BMW's duty to disclose.   Plaintiff alleges that

3  BMW actively concealed the Cracking Defect by withholding information about

4  the systematic nature of the problem from consumers, and where BMW replaced

5  Class Vehicles' windshields, BMW utilized equally defective windshields such

6  that the defect was not corrected even though BMW informed consumers that it

7  was.  (FAC ¶ 38-40.)  *See Falk*, 496 F. Supp. 2d at 1097 (explaining that an

8  automaker's replacement of defective parts with the same defective model

9  constitutes concealment of a systematic problem).[15]  Additionally, BMW actively

10 concealed the Cracking Defect by providing free repair and replacement

11 windshields to consumers who complained loudly without disclosing the full

12 nature of the program to the general consumer base.  (FAC ¶¶ 38-40 & 61-71.)

13 BMW also actively concealed the defect by using a pen test to deny the defect and

14 transfer the cost of the windshield replacements to consumers, even though BMW

15 knew that the pen test frequently produces false positives.  (*Id.* ¶¶ 48-50);

16 *Marsikian*, slip op. at 8 (allegations that automaker extended secret "good will

17 adjustments" to consumers who complained loudly enough, without disclosing the

18 full nature of the problem to the general public, indicated active concealment);

19 *Stickrath*, 2008 U.S. Dist.  LEXIS 12190, at **9-11 ("Plaintiffs' allegations that

20 Defendant knew of material defects but did not disclose them to potential

21 customers are sufficient to allege a duty to disclose under an active concealment

22 theory.").

---

25 [15] Indeed, Plaintiff was forced to replace his windshield a second time after
26 the replacement windshield cracked while parked in his garage overnight.  (*Id.* ¶
   23.)  Thus, BMW continued to actively conceal the defective nature of the
27 windshields it uses in the Class Vehicles even after customers sought replacements
   for already-cracked windshields.

### B.   BMW Engaged in Fraudulent Conduct

Fraud under the UCL is "distinct from common law fraud." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  Under the UCL, it is not necessary to plead actual falsity, knowledge by the perpetrator, and reasonable reliance, because the focus is on defendant's conduct, not plaintiff's damages.  *Id.*  To establish that BMW's conduct constituted a fraud under the UCL, Plaintiff need only show that "members of the public are likely to be deceived." *Daugherty*, 144 Cal. App. 4th at 838.  Selling a vehicle without disclosing that its windshield is inordinately prone to cracking under relatively normal circumstances is likely to deceive consumers. *Falk* 496 F. Supp. 2d at 1098 ("[M]embers of the public would very likely be deceived" by failure to disclose safety defect.).

As discussed above, Plaintiff alleges a duty to disclose, and also alleges facts demonstrating that BMW breached this duty.  Ultimately, however, whether or not BMW's business practices are deceptive is a question of fact that requires consideration and weighing of evidence from both sides, and thus is not suitable for resolution on a motion to dismiss.  *See Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007).  Because it is far from "impossible" that plaintiff will be able to present evidence to support its allegation that a reasonable consumer was likely to be deceived by BMW's conduct, this is not one of those "rare situations" where granting a motion to dismiss is appropriate.  *Williams v. Gerber Products Co.*, 523 F.3d 934, 939 (9th Cir. 2008).

### C.   BMW Engaged in Unfair Practices

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).  To determine whether a business practice is unfair, the court must review the evidence from both parties and weigh any legitimate utility of the practice against the harm to

1  consumers; this decision "cannot usually be made on demurrer." *See id.*

2       Here, Plaintiff alleges practices, including BMW's failure to disclose the

3  Cracking Defect and its motives for not remedying the problem, (FAC ¶¶ 17, 38 &

4  94-96), that, upon review of all the evidence, may prove to be contrary to public

5  policy, immoral, unethical, unscrupulous, and/or substantially injurious to

6  consumers. *See Mourning v. Smithkline Beecham Corp.*, 2009 WL 733873, at *4

7  (N.D. Cal. March 17, 2009) ("Failing to provide safety information is a practice that

8  violates public policy.").

9       **D.     Plaintiff Has Adequately Alleged the Existence of a Secret Warranty**

10          **Adjustment Program Under the Unlawful Prong of the UCL.**

11       "The 'unlawful' practices prohibited by section 17200 are any practices

12  forbidden by law, be it civil, criminal, federal, state, or municipal, statutory,

13  regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-

14  39 (1994).  As discussed extensively in the FAC, BMW's secret warranty

15  adjustment program qualifies as an unlawful "adjustment program" as that phrase is

16  defined by the clear and straightforward language of California's Motor Vehicle

17  Warranty Adjustment Programs Act ("MVWAPA," also known as the "Secret

18  Warranty Law").  Cal. Civ. Code § 1795.90 *et seq.*[16]

19       The Secret Warranty Law imposes certain duties on vehicle manufacturers.

20  Among these are to notify consumers about the covered "condition" and the "terms

21  and conditions of the program."  Cal. Civ. Code § 1795.92.  Plaintiff has alleged

22  that while BMW does not normally cover cracked windshields under its warranty,

---

[16] MVWAPA defines an "adjustment program" as a "program" or "policy"
that (1) "expands or extends the consumer's warranty beyond its stated limit," or (2)
"under which a manufacturer offers to pay all or any part of the cost of repairing, or
to reimburse consumers for all or part of any part of the cost of repairing, any
condition that may substantially affect vehicle durability, reliability, or
performance."  Cal. Civ. § 1795.90(d).  If the alleged BMW program satisfies either
of the criteria set forth in Section 1795.90(d), it is an "adjustment program" within
the meaning of the MVWAPA.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**

1   in February 2009, it issued an internal bulletin to only its dealers in which it

2   acknowledged the existence of the Cracking Defect and offered to replace the

3   windshields under "warranty [] where a stress crack is the root cause."  (FAC ¶¶ 12-

4   13.)  The TSB describes the covered "condition" (*i.e.*, stress crack) and provides

5   several bullet points explaining the "terms and conditions of the program" before it

6   can be covered under warranty.  (*See id.* ¶ 12; *see also* Kizirian Decl. Ex. 2.)

7       BMW does not dispute the fact that it never gave notice to Plaintiff or the

8   prospective Class Members of its 2009 secret TSB program where it offered to

9   cover stress related cracks under warranty.[17]  Rather, BMW contends that the TSB

10  was simply issued to "reaffirm[] the type of windshield crack that is covered and is

11  not covered" under its warranty.  (MTD at 17:9-13.)  However, BMW fails to

12  explain why such a "reaffirmation" is needed if BMW is not deviating from its

13  standard warranty.  Indeed, there is nothing in BMW's warranty that offers to repair

14  "stress cracks."[18]  Moreover, under California's Secret Warranty Law, BMW

15  should have notified all Class Members of the conditions that give rise to free

16  windshield replacement, including those Class Members who incurred out-of-

17  pocket costs for stress-crack-related repairs prior to acquiring knowledge of the

18  program.  *See* Cal. Civ. Code §1795.92 ("A manufacturer who establishes an

19  adjustment program shall implement procedures to assure reimbursement of each

20  consumer . . . who incurs expenses for repair of a condition prior to acquiring

---

[17] *See Morris v. BMW*, 2007 U.S. Dist. Lexis 85513, at *18 (N.D. Cal. 2009) ("Defendants do not deny that they failed to inform the public of the of the adjustment program stemming from the TSB.  Thus, Plaintiffs have successfully alleged violations of the Secret Warranty Act.").

[18] Any argument by BMW that a "stress crack" is being covered under its "defect in material or workmanship" express warranty only *reaffirms* Plaintiff's argument that BMW has a secret warranty program in place because BMW is offering to cover under its "defect in material or workmanship" warranty only stress related defects, and not any non-stress related vehicle defects, as Plaintiff has alleged that the stress crack is only just one of several design and manufacturing defects that cause MINI windshields to crack.  (FAC ¶ 55.)

knowledge of the program."). Here, BMW failed notify Plaintiff (or any other Class Members) of the TSB program or to "implement procedures" that would have reimbursed Plaintiff or other prospective Class Members for their stress related defect windshield replacements.[19]

Furthermore, in addition to the free stress-related windshield repair and replacement program that BMW instituted in 2009, Plaintiff has alleged that both before and after the February 2009 TSB was issued, to mollify those consumers who complained loudly enough, BMW instituted another secret program where it paid for the cost of replacing or repairing the windshields of those Class Vehicles that suffer from the Cracking Defect, regardless of whether those cracks occurred within the vehicle's warranty period or whether they are stress crack related. (FAC ¶¶ 14-15 & 61-71.)[20] Again, BMW did not notify Plaintiff or any other Class Member of these programs. (*Id.* ¶ 71.) Thus, by extending its warranty to cover the replacement costs of cracked windshields (and by doing so even if that warranty had expired), regardless of whether the cracks are stress related, BMW has expanded or extended the consumer's warranty beyond its stated limits in violation of California Secret Warranty law. (*Id.* ¶¶ 16, 67 & 68.)

Contrary to BMW's assertions, (MTD at 16-17), BMW's decision to offer the free windshield replacement is not done on an *ad hoc* basis. (*Id.* ¶ 67.) Rather, it is made pursuant to a systematic policy—communicated to, *inter alia*, regional offices, dealers, and BMW customer care personnel—designed to pacify the most

---

[19] While BMW may contend that Plaintiff's first windshield replacement was not covered warranty, there is no question that Plaintiff's second windshield replacement was covered by BMW's one-year implied warranty. (*See infra* § A.2.)

[20] For example, on or about February 2003, with approximately 60,000 miles on Class Vehicle owner Alitzah Wiener's 2005 Mini Cooper, MINI Monorovia, on behalf BMW, replaced Ms. Wiener's cracked windshield, which it had diagnosed with a stress crack under BMW's warranty as "customer goodwill." (FAC ¶ 69 & fn. 3.) Plaintiff has alleged other prospective Class Members have received similar adjustments paid for by BMW under the code name "Goodwill." (*Id.* ¶¶ 67-69.)

vocal consumers. (*Id.*)  BMW's argument that the consumer complaints alleged in Plaintiff's complaint show an "*ad hoc*" policy that demonstrate only stress-related repairs are covered under its express warranty misconstrues the allegations of Plaintiff's Complaint.  (MTD at 16:25-17-3.)  Plaintiff has offered examples of consumers suffering stress-related cracks but nevertheless being denied warranty coverage.  (*See, e.g.*, FAC ¶ 35 at 8:13-21 & 11:25-12:12.)  Moreover, Plaintiff has offered examples of Class Members experiencing stress-related cracks and being denied warranty coverage because of the pen test, which is a ploy that BMW relies on to deny any responsibility by making it appear as though the MINI's windshields cracks are caused by something other than a defect, and to foist the cost of repairing or replacing the defective windshields on Class Members and their insurers.  (*Id.* ¶ 48; *and see, e.g.*, *id.* ¶ 35 at 9:20-10:7 ("Dealers often deny warranty claims, pointing to the smallest of imperfections as 'impact sites' and passing replacement costs to owner's comprehensive insurance.  This, despite no history of specific impacts with any objects while driving.").  Finally, BMW's contention that these cracks are not stress-related is a is a factual question.

In *Marsikian*, Judge Matz addressed the pleading of a UCL unlawful claim based on a violation of the Secret Warranty Law, denied Mercedes' motion to dismiss for failure to state a claim.  The class action plaintiffs in *Marsikian* alleged: that the defendant had a policy of providing "temporary fixes" for an alleged defect, which constituted a warranty adjustment program under the MVWAPA because maintenance of the defect part was not covered under the original warranty; that defendant extended the warranty even further by repairing and reimbursing defect related damages for the most vocal complaining customers as "good will adjustments" or "policy adjustments;" that plaintiffs were not informed of the adjustment program; and that when plaintiffs requested a free repair or replacement they were refused.  *Marsikian*, slip op. at 17-19.  The district court found these allegations to be adequate to state a UCL claim based on a violation of the Secret

1  Warranty Law.  *Id.*  Plaintiff's allegations in the instant case are substantially

2  similar to the allegations that the *Marsikian* court found to be sufficient, and

3  BMW's Motion to Dismiss should similarly be denied.

4       **E.**       **Plaintiff Has Adequately Pled That Defendant Breached the**

5                **Implied Warranty Under The Song-Beverly Act.**

6           **1.**    **Vertical privity is not required under the Song-Beverly Act.**

7       BMW's claim that Song-Beverly requires "vertical privity" between Plaintiff

8  and Defendant has been rejected by other California courts, and should be rejected

9  here as well.  *See e.g. Gonzalez v. Drew Industries, Inc.*, 2007 U.S. Dist. LEXIS

10  35952, at \*\*2-3 (C.D. Cal. 2007) ("[A]lthough defendants argue that the implied

11  warranty claims should be dismissed because they have no vertical privity with

12  *Gonzalez*, this argument ignores the plain language of the Song-Beverly Act, which

13  has been interpreted by a sister-district court in this district as explicitly imposing an

14  implied warranty on manufacturers as well as retail sellers.") (*citing Gusse v.*

15  *Damon Corp.*, 470 F. Supp. 2d 1110, 1116 fn.9 (C.D. Cal. 2007)).  BMW's

16  contention conflicts with the plain meaning and the goals of the Song-Beverly Act,

17  which extends implied warranties to all consumer goods sold at retail.  Song-

18  Beverly provides, "every sale of consumer goods that are sold at retail in this state

19  shall be accompanied by the manufacturer's and the retail seller's implied warranty

20  that the goods are merchantable."  Cal. Civ. Code § 1792.  The statute's language is

21  clear: both the manufacturer and the retail seller are presumed to have impliedly

22  warranted the goods.

23       *Atkinson v. Elk Corp.*, 109 Cal. App. 4th 739, 750 (2003), supports Plaintiff's

24  claim.  There, plaintiff contracted with a third party to repair his roof.  *Id.* at 744-45.

25  The third party purchased roof shingles from defendant manufacturer, which the

26  third party then used in its work on plaintiff's roof.  *Id.* at 750.  "The court in

27  *Atkinson* noted that the defendant was not a 'retail seller' under the Song-Beverly

28  Act, and explained that the pertinent question was instead whether the third party

(the entity that plaintiff paid to repair the roof) was a retail seller." *GPU Litigation*, 2009 U.S. Dist. Lexis 108500, at **15-16 (N.D. Cal. 2009) (citing *Atkinson*, 109 Cal. App. 4th at 750, and discussing the split in case law and finding that the relevant inquiry is whether the goods at issue were "sold at retail," rather than whether they were sold by defendant manufacturer ).  Here, there is no question that Plaintiff purchased the subject vehicle at retail.  (FAC ¶ 20.)[21]

### 2.  Plaintiff has successfully alleged that BMW breached the implied warranty during the applicable warranty periods.

BMW claims that the Song-Beverly Act and its express warranty limit the application of implied warranties to defects that manifest themselves within one year of the date of purchase.  (MTD at 12-13.)  Invoking a half-century of California precedent, however, the California Court of Appeals considered and rejected the same argument in *Mexia*, 174 Cal. App. 4th at 1305, concluding that "a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery."

In *Mexia*, plaintiff commenced action under the Song-Beverly Act, asserting that he purchased a boat that was unmerchantable due to a latent defect that manifested itself two years after the sale of the boat.  *Id.* at 293.  Defendants demurred, arguing that "the [four-year] duration provision of the Song-Beverly Act should be interpreted as barring an action for breach of the implied warranty of merchantability when the purchaser fails to discover and report the defect to the

---

[21] BMW's reliance on *Clemens*, 534 F.3d at 1023, is to no avail.  (MTD at 12.)  There, the court relied on *Osborne v. Subaru of America*, 198 Cal. App. 3d 646 (1988), a case in which recovery was sought under Commercial Code § 2314. While the *Osborne* court did find that vertical privity was required under § 2314, it never addressed claims brought under the Song-Beverly Act.  *See id.* at 651; *see also Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304 (2009) (citing Cal. Civ. §1790.3 ("[T]o the extent that the [Song-Beverly] Act gives rights to buyers of consumer goods, it prevails over conflicting provisions of the Uniform Commercial Code.")).

seller within the time period specified in that provision." *Id.* at 1301-02.

Defendants also contended that plaintiff's claims were precluded because

defendants' "limited warranty expressly limits the duration of any implied

warranties of merchantability . . . to the [one-year] term of this limited warranty and

disclaims any implied warranty of merchantability . . . after expiration of this

limited warranty." *Id.* (quotation omitted).  Rejecting the same arguments that

BMW makes here, the court stated that the Song-Beverly Act "merely creates a

limited prospective duration for the implied warranty of merchantability; it does not

create a deadline for discovering latent defects or for giving notice to the seller." *Id.*

at 1301; *see also id.* at 1305 ("The implied warranty of merchantability may be

breached by a latent defect undiscoverable at the time of sale.").

Here, Plaintiff has alleged that BMW breached the implied warranty at the

time of sale when it sold to Plaintiff and prospective Class Members vehicles that it

knew suffered from the Cracking Defect.  (FAC ¶¶ 2 & 125-26.)[22]  Accordingly,

Plaintiff has adequately stated a claim for breach of implied warranty, despite the

fact that the latent defect in his vehicle had not revealed itself within the one-year

express warranty period.[23]

BMW further contends that even if *Mexia* could apply, "'a claim for breach

of implied warranty of merchantability must be brought no later than four years

---

[22] Thus, this case is distinguishable from *Hovsepian*, 2009 WL 2591445,
because here Plaintiff alleges that BMW breached the implied warranty at the time
of sale, while in *Hovsepian* there was no allegation that the implied warranty was
breached at the time of sale as a result of a latent defect.

[23] Relying on *Hovsepian*, 2009 WL 2591445, at *8, BMW also claims that
*Mexia* is irrelevant because "BMW NA [] limits the duration of the implied
warranties for the class vehicles 'to the duration of the express warranty,' which is
four years or 50,000 miles [] and because the express warranty for plaintiff's MINI
had expired [when plaintiff suffered the cracking defect,] so had the implied
warranty."  However, the *Mexia* court clearly held that this argument had no merit
because "[Plaintiff] is not suing BMW to enforce its express limited warranty; it is
suing [BMW] for breach of implied warranty of merchantability, which arises by
operation of law."  *Mexia*, 174 Cal. App. 4th at 1306-07.

1  after the date of sale' when the cause of action has accrued' '*which for a latent*

2  *defect occurs at the time of purchase.*'"  (MTD at 14:5-8 (*citing Hovsepian v.*

3  *Apple, Inc.*, 2009 WL 2591445, at *8 n.6 (N.D. Cal. Aug. 21, 2009) (emphasis

4  added).)  Not so.  Based on the plain language of California Commercial Code §

5  2725[24] and the findings in *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App.

6  3d 205 (1991), and its progeny, the statute of limitations for a breach of warranty

7  does not begin to run until the discovery of the breach.

8       California Commercial Code § 2725(2) states that a cause of action accrues

9  when tender of delivery is made, but "where a warranty explicitly extends to future

10  performance of the goods and discovery of the breach must await the time of such

11  performance the cause of action accrues when the breach is or should have been

12  discovered."  The import of subdivision (2) and the "future performance" exception

13  was explained in *Krieger*, 234 Cal. App. 3d 205.  The court there found that the

14  exception applied to plaintiff's Song-Beverly claims when a dealer promised to

15  repair an automobile within 36 months of its purchase or during the first 36,000

16  miles of its use.  The court then held that the four-year limitations period of

17  California Uniform Commercial Code section 2725 did not begin to run until the

18  buyer reasonably knew that this promise would not be fulfilled.  In other words,

19  when a warranty explicitly extends to future performance of the goods, such as

20  BMW's 4-year/50,000-mile Limited Warranty, (FAC ¶ 14), the warranties, both

21  implied and express, are tolled until the breach is discovered.  Here, Plaintiff has

22  sufficiently alleged the tolling of the statue of limitations based on Plaintiff's

23  inability to discover the Cracking Defect.  (*Id.* ¶¶ 21-23 & 75-78.)[25]  *See Mills v.*

24  _____

25      [24] The Song-Beverly Act is governed by the same statute that governs the
   statute of limitations for warranties arising under the California Commercial Code:

26  *section 2725 of the California Uniform Commercial Code.  Jensen v. BMW of*
   *North America, Inc.*, 35 Cal. App. 4th 112, 132 (1995).

27      [25] Moreover, the Official Comment to UCC § 2-725 states: "Subsection (4)

28  makes it clear that this Article does not purport to alter or modify in any respect the

1   *Forestex*, 108 Cal. App. 4th 625, 642, 648-49 (2003) ("[A] cause of action for
2   breach of warranty . . . accrues upon discovery of the breach.").

3       Finally, BMW claims it did not breach the implied warranty because
4   plaintiff's car provided reliable and safe transportation for over three years.  (MTD
5   at 15:19-22.)  BMW's argument "ignores the distinction between unmerchantability
6   caused by a latent defect [at the time of sale] and the subsequent discovery of the
7   defect." *See Mexia*, 174 Cal. App. 4th at 1307-08.  In other words, just because
8   Plaintiff first experienced the Cracking Defect several years after the sale of the
9   vehicle does not necessarily mean that a defect did not exist at the time of sale.  *See*
10  *id.* ("[T]he fact that the alleged defect resulted in destructive corrosion two years
11  after the sale of the boat does not necessarily mean that the defect did not exist at
12  the time of sale.").  Moreover, BMW's argument that despite the defect, plaintiff's
13  vehicle is merchantable as a matter of law because it provided Plaintiff with
14  transportation is also without merit.  *See Isip v. Mercedes-Benz USA, LLC*, 155 Cal.
15  App. 4th 19, 26 (2007) ("We reject the notion that merely because a vehicle
16  provides transportation from point A to point B, it necessarily does not violate the
17  implied warranty of merchantability.  A vehicle that smells, lurches, clanks, and
18  emits smoke over an extended period of time is not fit for its intended purpose.").
19  Indeed, BMW admits in its secret TSB that the class vehicles are not merchantable
20  at the time of sale because they suffer from a "stress crack."

21          **3.   Even if BMW's implied warranty is limited to one year from**
22               **the date of purchase, BMW breached it when Plaintiff's**
23               **second windshield cracked eight months after he replaced it.**
24      In order to bring suit against BMW under the Song-Beverly Act, Plaintiff

25  ———————————————————————————————————
26  law on tolling of the Statute of Limitations as it now prevails in the various
    jurisdictions." *See* Cal. Com. Code. § 2725(4).  Thus, Plaintiff's implied warranty
27  claim is also tolled as a result of BMW's fraudulent conduct. *See Mills*, 108 Cal.
    App. 4th at 641 (enforcing statute of limitations for breach of warranty claim
28  "subject to tolling or estoppel").

1   must be a "buyer of consumer goods." *Atkinson*, 109 Cal. App. 4th at 748. The

2   term "consumer goods" as used in the Act is defined as "any new product or *part*

3   *thereof that is used*, bought, or leased for use primarily for personal, family, or

4   household purposes, except for clothing and consumables . . . ." *See* Cal. Civ. Code

5   § 1791(a) (emphasis added). As a matter of law, "every sale of consumer goods . . .

6   shall be accompanied by the manufacturer's and the retail seller's implied warranty

7   that the goods are merchantable." *Id.* § 1792. Here, the replacement MINI

8   windshield that Plaintiff purchased in March 2008 was a consumer good and was

9   accompanied by BMW's one-year implied warranty of merchantability. (FAC ¶¶

10  20-24.)[26] Moreover, there is no question that (even by its own limited definition)

11  BMW breached the implied warranty when Plaintiff's windshield cracked within

12  one year of sale in November 2008. *Id.* While BMW may contend that it has no

13  liability because Plaintiff failed to provide it with an opportunity to remedy the

14  breach, California case law is clear that there is no requirement that that the buyer

15  allow the seller or manufacturer an opportunity to repair the product prior to

16  bringing an action for breach of implied warranty of merchantability. *Mocek v. Alfa*

17  *Leisure, Inc.*, 114 Cal. App. 4th 402, 406-07 (2003).

18  **V.    CONCLUSION**

19          For the foregoing reasons, Plaintiff respectfully requests that this Court deny

20  Defendant's motion to dismiss.

21  Dated: June 28, 2010

22                                          By: /s/ _____
                                                Dara Tabesh
23                                              Attorneys for Plaintiff

24

25

26  _____

27      [26] BMW did not provide Plaintiff with an express warranty that covered the
    replacement windshield, so accordingly, the maximum one-year time period for
28  implied warranties shall apply. *See* Cal. Civ. Code §1791.1(c).