ROY M. BRISBOIS, SB# 53222
 E-Mail: brisbois@lbbslaw.com
ERIC Y. KIZIRIAN, SB# 210584
 E-Mail: kizirian@lbbslaw.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for BMW of North America, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARTIN EHRLICH, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | CASE NO. CV10-1151 ABC (PJWx)<br><br>Hon. Audrey B. Collins<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS**<br><br>Date:     July 26, 2010<br>Time:     10:00 a.m.<br>Location: Courtroom 680<br><br>Trial Date:   None set |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. PLAINTIFF'S FAILURE TO ALLEGE RELIANCE COMPELS DISMISSAL OF HIS CLRA AND UCL CLAIMS. ......................................... 2

III. EVEN IF HE HAD ALLEGED RELIANCE, PLAINTIFF DOES NOT ALLEGE A DUTY TO DISCLOSE. ............................................................. 3

    A. Plaintiff Has Not Alleged A "Safety" Based Disclosure Obligation. ................................................................................................. 4

    B. Plaintiff's Alternative "Duty to Disclose" Allegations Also Fail. .......... 7

IV. CALIFORNIA'S CONSUMER PROTECTION LAWS CANNOT BE USED TO CIRCUMVENT VALID LIMITATIONS ON EXPRESS WARRANTIES. ................................................................................................ 8

V. PLAINTIFF'S BREACH OF IMPLIED WARRANTY CLAIM UNDER THE SONG-BEVERLY ACT FAILS FOR MULTIPLE REASONS. ........................................................................................................10

    A. Lack of Privity Bars Plaintiff's Implied Warranty Claim. ................... 10

    B. Plaintiff Does Not Allege A Breach of Implied Warranty During The Applicable Implied Warranty Period. ............................................ 12

VI. PLAINTIFF'S UCL CLAIM BASED ON ALLEGED VIOLATIONS OF THE "SECRET WARRANTY" LAW FAILS DUE TO A LACK OF PREDICATE. ................................................................................................14

VII. CONCLUSION ...................................................................................................16

## Table of Authorities

**Page**

Cases

Abraham v. Volkswagen of America, Inc.,
  795 F.2d 238, 250 (2d Cir.1986) .................................................................... 9

Am. Suzuki Motor Co. v. Sup. Ct,
  37 Cal. App. 4th 1291 (1995) ................................................................. 11, 13

Atkinson v. Elk Corp. of Texas,
  142 Cal. App. 4th 212 (2006) ........................................................................ 12

Berenblat v. Apple, Inc.,
  2009 WL 2591366 (N.D. Cal. Aug 21, 2009) ................................................ 4

Berenblat v. Apple, Inc.,
  2010 WL 1460297 (N.D. Cal. Apr 09, 2010) ............................................ 4, 13

Brothers v. Hewlett-Packard Co.,
  2007 WL 485979 (N.D. Cal. Feb. 12, 2007) ................................................ 15

Buckland v. Threshold Enterprises, Ltd.,
  155 Cal. App. 4th 798 (2007) ..................................................................... 2, 4

Carlson v. Monaco Coach Corp.,
  486 F. Supp. 2d 1127 (E.D. Cal. 2007) ........................................................ 11

Chamberlan v. Ford Motor Co.,
  369 F. Supp. 2d 1138 (N.D. Cal. 2005) ......................................................... 9

Cirulli v. Hyundai Motor Co.,
  2009 WL 5788762 (C.D. Cal. June 12, 2009) ............................................... 8

Daugherty v. American Honda Motor Co., Inc.,
  144 Cal. App. 4th 824 (2006) ......................................................................... 5

Falk v. General Motors,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................................... 6, 10

Hovsepian v. Apple, Inc.,
  2009 WL 2591445 (N.D. Cal. Aug 21, 2009) ................................................ 4

Hovsepian v. Apple, Inc.,
  2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ............................................... 7

Hovsepian v. Apple, Inc.,
  2009 WL 2591445 (N.D. Cal., August 21, 2009) ........................................ 12

In re Apple & AT&TM Antitrust Litig.,
  596 F. Supp. 2d 1288 (N.D. Cal. 2008) ......................................................... 3

In re Tobacco II Cases,
  46 Cal. 4th 298 (2009) ................................................................................... 2

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   684 F. Supp. 2d 942 (N.D. Ohio 2009) ........................................................... 11

*In Re: OnStar Contract Lit.*,
   600 F.Supp.2d 861 (W.D. Mich. 2009) ........................................................... 10

*Krieger v. Nick Alexander Imports, Inc.*,
   234 Cal. App. 3d 205 (1991) ........................................................................... 11

*Larsen v. Nissan North America*,
   2009 WL 1766797 (Cal. Ct. App. 2009) ........................................................... 4

*Marsikian v. Mercedes Benz USA, LLC*,
   2009 U.S. Dist. LEXIS 117012 (C.D. Cal. May 4, 2009) .............................. 15

*Mexia v. Rinker Boat Co.*,
   174 Cal. App. 4th 1297 (2009) ....................................................................... 12

*Mills v. Forestex Co.*,
   108 Cal. App. 4th 625 (2003) ......................................................................... 11

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) .................................................................................. 2, 3

*Morgan v. Harmonix Music Sys.*,
   2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009) ................................ 11

*Oestreicher v. Alienware Corp.*,
   332 Fed. Appx. 483 (9th Cir. April 2, 2009) .................................................... 4

*Owen v. General Motors Corp.*,
   533 F.3d 913, 920-21 (8th Cir. 2008) ............................................................... 7

*Sanchez v. Wal Mart Stores, Inc.*,
   2009 U.S. Dist. LEXIS 89057 (E.D. Cal. Sept. 11, 2009) ............................... 3

*Stearns v. Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. June 5, 2009) ............................................ 14, 15

*Tietsworth v. Sears Roebuck & Co.*,
   2009 WL 3320486 (N.D. Cal. Oct. 31, 2009) ..................................... 7, 12, 15

*Tietsworth v. Sears Roebuck & Co.*,
   --- F.Supp.2d ----, 2010 WL 1268093 (N.D. Cal. March 31, 2010) ........... 6, 10

*Walsh v. Ford Motor Co.*,
   588 F. Supp. 1513, 1536 (D.D.C. 1984) ........................................................... 8

## Statutes

Cal. Civ. Code § 1792 ............................................................................................ 12

## I. INTRODUCTION

Plaintiff's Opposition to BMW's Motion to Dismiss attempts to make up in bulk what it lacks in substance. It looks directly past several pleading deficiencies BMW highlights in its motion, focusing instead on straw men. Notwithstanding plaintiff's diversionary efforts, numerous dispositive pleading deficiencies remain:

- ***Materiality (UCL & CLRA):*** Although plaintiff agrees that materiality requires proof *both* that a plaintiff (1) "would have been aware" of the allegedly concealed information and (2) behaved differently, the opposition does not identify a single fact in the complaint that establishes the first element, which is not surprising because plaintiff does not allege he reviewed any information concerning his vehicle pre-purchase.

- **UCL & CLRA Cannot Be Used To Circumvent Time/Mileage Limits of Express Warranties:** *Daugherty v. American Honda Motor Co., Inc.* establishes that where, as here, a manufacturer makes no representations about the life of a product outside those expressed in its limited express warranty, consumer expectations are framed solely by the time/mileage limits of a manufacturer's express warranty. Because plaintiff admits that the MINI's windshield was trouble-free throughout BMW's four year/50,000 mile limited express warranty period, he cannot use the UCL and CLRA to leapfrog past the limitations of BMW's warranty. Otherwise, a manufacturer would have to guarantee its products in perpetuity and could be sued at any time during the useful life of the product if plaintiff simply alleges that a claimed defect implicates an alleged "safety" concern (however unlikely).

- ***Failure to Allege Facts That Establish A Duty to Disclose:*** Even *assuming* that a claimed "safety" defect gives rise to a disclosure obligation, plaintiff must plead facts that establish an "unreasonable risk," not simply a hypothetical scenario where a vehicle is driven with a cracked windshield *and* is involved in a rollover—a severe accident that presents a safety risk to any consumer *regardless* whether the windshield is cracked.

- ***Lack of Privity and Failure to Allege Defect Manifestation During The Implied Warranty Period:*** The Song-Beverly Act supplements, rather than supersedes, the provisions of the California Uniform Commercial Code, which requires privity for implied warranty claims. Plaintiff's implied warranty claims fails because he has not pled facts that establish (1) privity (which is the standard that most district court decision have required in recent Song-Beverly implied warranty cases), *or* (2) a malfunction during the one-year implied warranty period, which provides an alternative and separate basis for dismissing his claim.

- ***No Facts That Establish A Prima Facie "Secret Warranty":*** Several courts have dismissed so-called secret warranty claims premised on conclusory allegations like the one plaintiff makes here, which simply establish a permissible business practice condoned by the very statute plaintiff invokes.

## II. PLAINTIFF'S FAILURE TO ALLEGE RELIANCE COMPELS DISMISSAL OF HIS CLRA AND UCL CLAIMS.

Plaintiff does not dispute that he did not review pre-purchase, much less rely on, *any* of the alleged "marketing" materials he identifies in paragraphs 42 through 46 of the First Amended Complaint. Thus, plaintiff makes clear he is proceeding on a pure omissions theory. But this does not obviate the need to plead and prove reliance for UCL and CLRA claims sounding in fraud. *Buckland v. Threshold Enterprises*, Ltd., 155 Cal. App. 4th 798, 810, 66 Cal. Rptr. 3d 543, 551 (2007) (reliance required element of CLRA claim); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326, 207 P.3d 20 (2009) (named plaintiff must plead and prove reliance). Reliance in omissions-based claims is framed in terms of materiality. *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093, 858 P.2d 568 (1993) (While "it is not logically impossible to prove reliance on an omission," reliance in such cases is established by proof that "had the omitted information been disclosed, [1] one **would have been aware of it** and [2] behaved

differently.")[1]  And although plaintiff agrees that the *Mirkin* materiality standard applies to his claims (Opp. at 7, *citing Mirkin*, 5 Cal. 4th at 1093)(emphasis added)), he nowhere explains how, without alleging that he reviewed any information about his vehicle pre-purchase, plaintiff "would have been aware" of the allegedly concealed information.

Unable to satisfy this critical element, plaintiff proceeds by misdirection. He devotes large portions of his brief to case examples – including a 2007 decision of this Court – that identify the *types* of facts that may be considered "material" to consumers. (Opp. at 7-9.) But this conflates two separate issues. The pleading deficiency BMW highlights is plaintiff's inability to establish a threshold showing of "materiality" under the standard plaintiff acknowledges applies. Thus, in the context of BMW's motion, the case examples that consume three pages of plaintiff's opposition and describe the *types* of facts that may be "material" are irrelevant because plaintiff has not pled facts that would establish "materiality" in the context of *his* claim against BMW.

### III. EVEN IF HE HAD ALLEGED RELIANCE, PLAINTIFF DOES NOT ALLEGE A DUTY TO DISCLOSE.

Plaintiff's "duty to disclose" argument proceeds on three theories: (1) the "propensity" of a windshield to crack presents a "safety" concern which implicates a duty to disclose under the CLRA; (2) BMW allegedly had "exclusive knowledge" of facts not known to plaintiff; and (3) BMW "actively concealed" the existence of material facts. As demonstrated below, plaintiff has failed to plead a disclosure

---

[1] *See, also, In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310-11 (N.D. Cal. 2008) (stating that materiality in CLRA context "depends on a plaintiff showing that 'had the omitted information been disclosed,' a reasonable consumer 'would have been aware of it and behaved differently'"); *Sanchez v. Wal Mart Stores, Inc.*, 2009 U.S. Dist. LEXIS 89057, *6 (E.D. Cal. Sept. 11, 2009) (applying *Mirkin* materiality standard to UCL claim).

1 obligation under any of these theories.

2 ### A. Plaintiff Has Not Alleged A "Safety" Based Disclosure Obligation.

3 As BMW notes it its opening brief, the *only* California appellate court that squarely has addressed the so-called "safety" exception under the CLRA is an unpublished opinion–*Larsen v. Nissan North America*, 2009 WL 1766797 (Cal. Ct. App. 2009) (unpublished). That court held that the "*contention* [that there is a "safety" exception to the CLRA] *is without merit.*" *Id.* at *4 n.4 ("[p]laintiffs do not identify the provision of the CLRA that creates this purported duty to disclose safety hazards, and our review of the CLRA failed to locate it") (emphasis added); *see also, e.g.*, *Buckland*, 155 Cal. App. 4th at 807 (affirming dismissal of UCL, CLRA, and FAL claims in case where plaintiff alleged defendant "in packaging and marketing their products, improperly suppressed the fact that the products contained potentially unsafe chemicals regulated under the FDCA and the Sherman Food, Drug and Cosmetic Act").[2] But even if such an exception did exist, plaintiff has not alleged facts that would implicate it.

Plaintiff makes it appear that a duty to disclose for pleading purposes is

---

[2] Even though *Larsen* is an unpublished decision of the California Court of Appeal, the Northern District of California has cited it in *three* separate opinions for different propositions. See *Hovsepian v. Apple, Inc.*, 2009 WL 2591445, *7 (N.D. Cal. Aug 21, 2009); *Berenblat v. Apple, Inc.*, 2010 WL 1460297, *3 n.2 (N.D. Cal. Apr 09, 2010); *Berenblat v. Apple, Inc.*, 2009 WL 2591366, *3 (N.D. Cal. Aug 21, 2009). California Rules of Court Rule 8.115(a), which plaintiff cites (Opp. at 8 n.7), governs the citation of California appellate decisions in *state* court, just as the federal corollary in the Ninth Circuit, Federal Rules of Appellate Procedure added Rule 32.1, prohibits *federal* courts from banning the citation of unpublished *federal* judicial opinions or other written dispositions of cases. And while plaintiff correctly notes that the Ninth Circuit in *Oestreicher v. Alienware Corp.*, 332 Fed. Appx. 483 (9th Cir. April 2, 2009) appeared to recognize that a safety based disclosure obligation may exist in some circumstances, that case was decided on April 2, 2009, which was over two months *before* the California Court of Appeal decided *Larsen* on June 23, 2009.

implicated simply because the complaint makes reference to a claimed "safety concern." But this is not enough for two reasons.

First, to the extent *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006), made any references to a safety-based disclosure obligation, it could only arise where plaintiff pleads facts that demonstrate an "unreasonable risk" to safety. 144 Cal. App. 4th at 836. Plaintiff's allegations fall significantly short of this standard. He alleges that a cracked windshield presents "a serious safety hazard" because the windshield is part a vehicle's "safety restraint system" ("SRS"), which is intended "to keep vehicle occupants within the relative safety of the passenger compartment **during collision or rollover**." (First Amended Complaint ("Comp.") ¶ 6) (emphasis added)). Indeed, each of circumstances that plaintiff posits could compromise consumer safety require that (1) the vehicle's windshield be "cracked" or "broken" and, (2) while driven in that condition, the vehicle be involved in a "roll over" or other severe collision:

- "Plaintiff is informed and believes that if a Class Vehicle's windshield is cracked, it can become dislodged during a rollover, compromising roof-crush resistance" (Comp. ¶ 52);
- "If the windshield is compromised, the air bag can be useless in a collision" (Comp. ¶ 8);
- "[T]he windshield provides much of the roof support for most vehicles. As a result, the windshield is a crucial component in preserving the structural integrity of the vehicle's passenger compartment during roll-overs" (Comp. ¶ 8).

Even assuming for purposes of this motion that the SRS functions as plaintiff alleges, he fails to allege facts that demonstrate an "unreasonable risk" because the same "risk" would exist in *any* vehicle that sustains a cracked windshield. And the risk of serious injury would be present in every instance where a vehicle rolls over, regardless whether a windshield is cracked at the time of the accident. This situation clearly is different

1 from cases where courts have found a valid safety concern – for example, a faulty
2 speedometer that does not accurately reflect the vehicle's speed *every* time a vehicle is
3 driven under *normal* driving conditions. *See, e.g., Falk v. General Motors*, 496 F.
4 Supp. 2d 1088 (N.D. Cal. 2007). Moreover, a crack in a windshield is a condition that
5 would be obvious to the driver. Thus, the driver would have to make a conscious
6 decision to drive the vehicle with a crack and expose himself to the potential risk
7 plaintiff claims exists, which is unlike an engine component that may malfunction
8 without warning while driving.
9      Second, plaintiff must do more than simply frame a hypothetical and speculative
10 risk of injury to satisfy his pleading burden. For example, plaintiffs in *Tietsworth v.*
11 *Sears Roebuck & Co.*, --- F.Supp.2d ----, 2010 WL 1268093 (N.D. Cal. March 31,
12 2010) ("*Tietsworth II*"), argued that they had pled a safety defect by alleging that
13 washing machines "equipped with the Electronic Control Boards pose a serious
14 personal safety risk, as the defective boards have led to the Machines spinning out of
15 control and literally exploding on a number of occasions…causing the heavy metal lid
16 to detach and fly across the laundry room…causing severe property damage and
17 threatening very serious bodily injury." *Id.* at *7. But the court held this was not
18 enough because plaintiffs had failed to identify a single instance where such a safety
19 risk had come to fruition "in such a way that [plaintiffs'] personal safety was at risk."
20 *Id.* at *7 n.6; *see also id.* at *7 ("There are no factual allegations that any named
21 Plaintiff or any identifiable member of the putative class actually experienced a
22 malfunction involving the machine 'spinning out of control' risking personal injury").
23      Similarly, plaintiff has not alleged a single instance where a vehicle with a
24 cracked windshield has compromised consumer safety in the manner he alleges in the
25 complaint—*i.e.*, injuries sustained in a roll over accident or other collision were more
26 severe because of a previously cracked windshield or the non-operation of SRS
27 components due to a cracked or "weakened" windshield. He only alleges a speculative
28 concern in a hypothetical scenario that neither plaintiff nor any member of the putative

class has experienced.

### B. Plaintiff's Alternative "Duty to Disclose" Allegations Also Fail.

Plaintiff's throw-in arguments that BMW had a duty to disclose because it allegedly had "exclusive knowledge" of the claimed defect and was in a "superior position" to know of its existence (Comp. ¶¶ 93-94) also cannot salvage his claims. For example, in *Tietsworth v. Sears Roebuck & Co.*, 2009 WL 3320486 (N.D. Cal. Oct. 31, 2009) ("*Tietsworth I*"), the Northern District held that "Plaintiffs [cannot] establish a duty by pleading, in purely conclusory fashion, that Defendants were in a 'superior position to know the truth about the Machines' and 'actively concealed' the defect." *Id.* at *4. This is so because "a determination in plaintiffs' favor, given plaintiffs' general allegations of 'exclusive knowledge as the manufacturer' and active concealment of a defect, would mean that any unsatisfied customer could make a similar claim every time a product malfunctioned." *Id.* at *4 (quoting *Oestreicher v. Alienware Corp.*, 544 F.Supp. 2d 964, 974 (N.D. Cal. 2008)); *see also Owen v. General Motors Corp.*, 533 F.3d 913, 920-21 (8th Cir. 2008) ("we agree with the district court that the unremarkable knowledge that a windshield wiper motor guaranteed for three years might be prone to failure due to fatigue sometime after the warranty expires is too broad an assertion to establish the type of superior knowledge that can substitute for the false representation element of fraudulent concealment"); *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, *3 n.3 (N.D. Cal. Dec. 17, 2009) ("*Hovsepian II*") ("knowledge that a product is likely to fail at some point cannot give rise by itself to an actionable claim because '[s]uch knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired.") Plaintiff must be held to these same standards.

## IV. CALIFORNIA'S CONSUMER PROTECTION LAWS CANNOT BE USED TO CIRCUMVENT VALID LIMITATIONS ON EXPRESS WARRANTIES.

Plaintiff cannot wipe away the valid time and mileage limitations of an express warranty simply by recasting his claim for the post-warranty failure of a component part as a claim under California's consumer protection laws. As the Ninth Circuit recognized in *Clemens v. DaimlerChrysler*, 534 F.3d 1017 (9th Cir. 2008), "[i]n the context of post-warranty failure of [vehicle parts], California courts have viewed fraudulent concealment actions under this statute with some skepticism ...." *Clemens*, 534 F.3d at 1026. There is no reason to depart from this line of precedent here even *if* plaintiff could plead a cognizable "safety" concern (which as demonstrated above, he cannot).

The skepticism that attaches to claims premised on the post-warranty failure of vehicle parts is well-founded and based on sound policy considerations. Several courts have highlighted these policy considerations in refusing to impose liability for product defects that *may* surface after warranties expire because a contrary finding "would eliminate term limits on warranties, effectively making them perpetual or at least for the 'useful life' of the product." *Oestreicher*, 544 F. Supp. 2d at 972; *Walsh v. Ford Motor Co.*, 588 F. Supp. 1513, 1536 (D.D.C. 1984) ("[T]o hold that all latent defects are covered under the written warranty, whether they become apparent to the customer before or after the expiration of the written warranty, would place an undue burden on the manufacturer.... [because the manufacturer] would, in effect, be obliged to insure that a vehicle it manufacturers is defect-free for its entire life.").[3] As the Second Circuit

---

[3] Plaintiff's citation to and reliance on *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762 (C.D. Cal. June 12, 2009) (incorrectly cited by plaintiff as "*Circlli*") for the proposition that the post-warranty failure of vehicle parts are actionable under the UCL and CLRA is misleading. Although *Cirulli* involved the post-warranty failure of a vehicle part, the (footnote continued)

succinctly noted in a case that involved alleged defects that led to "engine damage and failure":

> [V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a 'latent defect' that existed at the time of sale or during the term of the warranty.  All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time… ***A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage***.

*Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 250 (2d Cir.1986) (emphasis added).  "Indeed, the purpose of a warranty is to contractually mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer." *Oestreicher*, 544 F. Supp. 2d at 972.

The same policy reasons would apply even if plaintiff had alleged a valid safety concern.  Otherwise, any plaintiff can plead around the time-honored time limits of an express warranty simply by characterizing *any* claimed defect as one that affects safety.  And that is precisely what plaintiff is doing here in claiming that the propensity of a windshield to crack allows him to sidestep the time and mileage limitations of BMW's express warranty.[4]

---

issue whether a UCL or CLRA claim can be made to circumvent the time/mileage limitations of a manufacturer's warranty was not addressed by the Court.  It goes without saying that a case is no authority for an issue it did not address or decide.

[4] Plaintiff's citation to cases that purportedly sanction UCL or CLRA claims for the post-warranty failure of parts in cases alleging "safety" defects does not dictate a different result.  The first case, *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005) predates *Daugherty* and thus its holding has little-to-no relevance in cases that implicate *Daugherty* and its holding.  The second case, *In Re: OnStar* (footnote continued)

## V. PLAINTIFF'S BREACH OF IMPLIED WARRANTY CLAIM UNDER THE SONG-BEVERLY ACT FAILS FOR MULTIPLE REASONS.

Plaintiff's breach of implied warranty claim must be dismissed without leave to amend for two independent reasons. First, plaintiff does not and cannot allege privity, which is a required element for an implied warranty claim. Second, to the extent there was any alleged breach of implied warranty, it occurred long after the implied warranty as established by statute and by BMW's express warranty had elapsed.

### A. Lack of Privity Bars Plaintiff's Implied Warranty Claim.

Relying on two carefully selected district court cases and ignoring several contrary decisions, plaintiff claims that implied warranty claims brought under the Song-Beverly Act are immune from privity requirements. Not so. Although *Gonzalez v. Drew Industries, Inc.*, 2007 U.S. Dist. LEXIS 35952 (C.D. Cal. 2007) and *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110 (C.D. Cal. 2007) (which cited *Gonzalez* and dismissed the privity argument without much analysis in a footnote)[5] found that privity is not required under the Song-Beverly Act, several other more recent district court decisions have held to the contrary in dismissing implied warranty claims under the Song-Beverly Act due to lack of privity. *See, e.g., Tietsworth II*, 2010 WL 1268093 at

---

*Contract Lit.*, 600 F.Supp.2d 861 (W.D. Mich. 2009), merely parrots *Falk* (496 F. Supp. 2d 1088 (N.D. Cal. 2007)) – a case that is considered an outlier. Indeed, the Ninth Circuit in *Clemens*, a 2008 case involving failed head gaskets, did not even mention *Falk*, even though the alleged defect there easily could have been characterized as posing serious safety risks.

[5] Although not cited by plaintiff, BMW notes for the Court that *In re NVIDIA GPU Litig.*, 2009 U.S. Dist. LEXIS 108500 (N.D. Cal. 2009) noted the lack of "consensus" on the issue whether privity is required under the Song Beverly Act and concluded, without analysis, "[p]laintiffs' lack of privity with Defendant does not entitle Defendant to dismissal of the Song-Beverly claim." For the reasons stated herein, BMW respectfully submits that cases finding privity is required are more consistent with the statutory provisions and announce the better rule of law.

*14 (dismissing Song-Beverly implied warranty claim against Whirlpool for washer purchased at Sears because "[v]ertical privity is a necessary element of an implied warranty claim."); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 956 (N.D. Ohio 2009) ("to the extent that the Plaintiffs bring an implied warranty claim in California, *including under the Song-Beverly Act*, this Court DISMISSES those claims for lack of privity") (emphasis added); *Morgan v. Harmonix Music Sys.*, 2009 U.S. Dist. LEXIS 57528, *5-6 (N.D. Cal. July 7, 2009) ("The vertical privity requirement exists under *both* the Song-Beverly Act and the California Commercial Code) (emphasis added).

BMW respectfully submits that cases imposing a privity requirement for Song-Beverly implied warranty claims announce the better rule of law. "The Song-Beverly Act incorporates the provisions of sections 2314 and 2315 [of the Uniform Commercial Code]" and "supplements, rather than supersedes, the provisions of the California Uniform Commercial Code...." *Am. Suzuki Motor Co. v. Sup. Ct*, 37 Cal. App. 4th 1291, 1295, 44 Cal.Rptr.2d 526 (1995); *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 213, 285 Cal. Rptr. 717 (1991) (same). Courts have imported requirements of the Uniform Commercial Code ("UCC") to the Song-Beverly Act where the Song-Beverly Act is silent or ambiguous. *See, e.g., Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 642, 134 Cal. Rptr. 2d 273 (2003) (applying UCC's statute of limitations period to a claim under the Song-Beverly Act); *Carlson v. Monaco Coach Corp.*, 486 F. Supp. 2d 1127, 1130 (E.D. Cal. 2007) ("The California Commercial Code governs how to interpret when title passes under the Song-Beverly Act."). Because implied warranty claims brought under the UCC require privity (*Clemens*, 534 F.3d at 1023-24), implied warranty claims under the Song-Beverly Act must also. Indeed, the express language of the statute supports a privity requirement because it provides retailers with an indemnity claim against manufacturers, which would be unnecessary if the buyer could bring an implied warranty claim directly against the manufacturer. *See* Cal. Civ. Code § 1792. ("The retail seller shall have a right of indemnity against the

1  manufacturer...").

2  Ultimately, the issue whether privity is required for plaintiff to state a cognizable
3  implied warranty claim is academic because, as demonstrated below and in BMW's
4  moving papers, plaintiff fails to allege that his vehicle was not merchantable and fit for
5  its intended purpose throughout the maximum one-year statutory implied warranty
6  period.

7  **B.  Plaintiff Does Not Allege A Breach of Implied Warranty During The
8  Applicable Implied Warranty Period.**

9  Plaintiff's efforts to explain-away his inability to plead a windshield crack until
10  long after *both* the implied *and* express warranty periods had lapsed are futile. As
11  expected, he relies on an outlier decision – *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th
12  1297, 95 Cal. Rptr. 3d 285 (2009) – that no court has followed. And he attempts to
13  divorce himself from both the class that he has pled in the complaint (California
14  consumers who *purchased or leased MINI Cooper vehicles*) and the facts he alleges by
15  inserting new facts found nowhere in his complaint by way of his opposition. Neither
16  contention salvages plaintiff's claim.

17  First, the statutory one-year implied period of California Civil Code § 1791.1(c)
18  is absolute. Nothing in the statutory language carves out an extended implied warranty
19  period for alleged "latent" defects beyond one year after a product is purchased – a
20  statutory period that California courts—with the exception of *Mexia*—have
21  acknowledged and enforced. *See, e.g., Atkinson v. Elk Corp. of Texas*, 142 Cal. App.
22  4th 212, 230, 48 Cal. Rptr. 3d 247 (2006) ("duration of the implied warranty of
23  merchantability under California law is limited to one year.") And plaintiff does not
24  identify a *single* California or federal decision that has adopted *Mexia*'s novel holding.
25  Not surprisingly, *Mexia* has been labeled an "outlier" (*Tietsworth I*, 2009 WL 3320486
26  at *12 n.6)) that is "contrary to well-established California case law …." *Hovsepian v.*
27  *Apple, Inc.*, 2009 WL 2591445, *8 n.7 (N.D. Cal., August 21, 2009) ("*Hovsepian I*");
28  *Butler v. Sears*, 2009 WL 3713687, *3 n.4 (N.D. Ill. November 04, 2009) (noting that

"[t]he majority position ... is that the Song-Beverly Act's implied warranty of merchantability expires after one year."); *Berenblat I*, 2010 WL 1460297 at *3 n.2 (*citing Larsen*, 2009 WL 1766797, at *5 (2009) (unpublished) ("the warranty of merchantability implied as a matter of law in California is limited to one year after purchase")). A contrary holding would grant consumers an indefinite warranty.

Second, even assuming that *Mexia* had any relevance here, its holding is limited to facts not present here. *Mexia*, which involved claims of premature corrosion in boats, relied upon *Moore v. Hubbard & Johnson Lumber Co.*, 149 Cal. App. 2d 236, 241, 308 P.2d 794 (1957), a case involving the sale of lumber infested with beetles at the time of sale. Unlike here, the products in *Mexia* and *Moore* were unmerchantable from day one. In contrast, a vehicle windshield with an alleged "*propensity* to crack, chip, and/or pit" (Comp. ¶ 2) (emphasis added), but that *does not* crack during the implied warranty period (or in the case of plaintiff, even during the longer express warranty period), is not rendered unmerchantable or unfit for its ordinary purpose. *Am. Suzuki*, 37 Cal. App. 4th at 1296-98 (alleged "propensity" of vehicles to roll-over does not give rise to implied warranty claim). Indeed, "the implied warranty of merchantability can be breached <u>only</u> if the vehicle <u>manifests a defect</u> that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." *Id.* at 1296 (emphasis added). Having not pled a manifestation during *either* the implied or express warranty periods, plaintiff's implied warranty claim cannot be salvaged by *Mexia*.

Finally, plaintiff cannot resurrect an implied warranty claim premised on the alleged cracking of a *replacement* windshield. Plaintiff and putative class he purports to represent include only "persons in the State of California who **purchased or leased the MINIs**." (Comp. ¶ 80) (emphasis added). There is no allegation that any cause of action is brought on behalf of or is limited to consumers who purchased *replacement* windshields. And to the extent plaintiff attempts to amend his personal claim through a motion to dismiss opposition, his personal claims are not representative of the putative

1 class he purports to represent. And although plaintiff *twice* cites to several paragraphs in the complaint as support for his claim that there is a "1-year/unlimited miles warranty period for replacement parts" (Opp. at 11 n. 12 & 25 (citing to ¶¶ 14-15, 20-24, 71), *none of those paragraphs actually plead such a parts warranty.*

## VI. PLAINTIFF'S UCL CLAIM BASED ON ALLEGED VIOLATIONS OF THE "SECRET WARRANTY" LAW FAILS DUE TO A LACK OF PREDICATE.

Plaintiff's second cause of action, for violation of the UCL based on alleged violations of California's Warranty Adjustment Act, Cal. Civ. Code § 1795.90 *et seq.*, fails because he has not alleged any violation of the "Secret Warranty Law." The mere fact that a manufacturer may on occasion offer to repair or replace a vehicle part outside of the warranty period does not amount to a violation of the Secret Warranty law. Indeed, the statute contemplates that such customer satisfaction measures are appropriate and encouraged in an industry where customer loyalty and satisfaction drive future sales. *See* Cal. Civ. Code, § 1795.90(d) (stating that "ad hoc" adjustments by a manufacturer made on a case-by-case basis do not constitute an "adjustment program"). Thus, pleading that a few customers, who each have received different forms of customer goodwill (*i.e.* no fact is alleged that establishes a uniform "policy"), does not establish a Secret Warranty claim. To the contrary, courts have found that such a practice serves a "legitimate business purpose" in dismissing similarly deficient Secret Warranty claims.

For example, plaintiff in *Stearns v. Comfort Retail Corp.*, 2009 WL 1635931 (N.D. Cal. June 5, 2009) attempted to plead a Secret Warranty claim by claiming that the defendants actively sought to conceal the fact that their "Sleep Number" beds grew mold by providing refunds of the purchase price to any purchaser who complained about a "Sleep Number" bed. But the court concluded that "the fact that Select Comfort offered a full refund does not support the theory that it had a plan to deceive Plaintiffs by somehow placating Plaintiffs and other potential litigants." *Id.* at *9 . It

1 also noted that return of a defective product "has been recognized by courts as a standard business practice, serving many legitimate business purposes." *Id.*

Similarly, *Tietsworth I* held that plaintiffs' allegation that defendants offered free upgrades of the Electronic Control Boards on certain washing machines did not support a permissible inference that defendants actively concealed the alleged defect. Relying on *Stearns*, the court noted that "defendants' alleged replacement policy properly is characterized as a standard business practice serving 'many legitimate business purposes.'" 2009 WL 3320486 at *5 ; *see also Brothers v. Hewlett-Packard Co.*, 2007 WL 485979, *2, 9 (N.D. Cal. Feb. 12, 2007) (holding that allegations company replaced computers only for customers who were "persistent enough" did not state a "secret warranty" claim). Indeed, the only case cited by plaintiff which held that a plaintiff had stated a claim under the law involved a vehicle part that was "*not included in the original warranty.*" *Marsikian v. Mercedes Benz USA, LLC*, 2009 U.S. Dist. LEXIS 117012, at *18 (C.D. Cal. May 4, 2009) (emphasis added). As demonstrated in BMW's moving papers, the February 2009 Technical Service Bulletin makes clear that a windshield "stress crack" normally would be covered under the New Vehicle Warranty and cracks caused by an "outside influence" or "excessive force" would not. (Kizirian Decl. ¶ 3, Ex. 2.) This is different from the reed valve issue in *Marsikian*, which the court acknowledged is not normally included in the original warranty, but that plaintiffs alleged Mercedes Benz had included in its alleged secret warranty.[6]

---

[6] Indeed, the February 2009 Service Bulletin does not purport to extend coverage for an other non-covered item. To the contrary, the Bulletin reinforces to dealers that "it is important to take note of the following guidelines regarding what types of damage may or may not be covered by the MINI New Vehicle Warranty." (Kizirian Decl. ¶ 3, Ex. 2.)

## VII. CONCLUSION

For the foregoing reasons, BMW respectfully requests that its motion to dismiss be granted in its entirety.

DATED: July 12, 2010

ROY M. BRISBOIS
ERIC Y. KIZIRIAN
LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Eric Y. Kizirian
Eric Y. Kizirian
Attorneys for BMW of North America, LLC